UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| SHANNON DELANE NAPIER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 6:19-CV-101-REW |
| v. | ) | |
| | ) | OPINION & ORDER |
| ANDREW SAUL,[1] Commissioner of | ) | |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

\*\*\*  \*\*\*  \*\*\*  \*\*\*

Shannon Napier appeals the Commissioner's denial of his application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI).[2] The parties filed dueling summary judgment motions. The Court, having considered the full record under governing law, **GRANTS** the Commissioner's motion (DE 14) and **DENIES** Napier's motion (DE 12) because substantial evidence supports the findings resulting in the administrative ruling, and the decision rests on proper legal standards.

_____

[1] Andrew Saul, replacing former Commissioner (and named Defendant) Nancy Berryhill, "was sworn in as Commissioner of Social Security on June 17, 2019[.]" *See* Commissioner Bio, Social Security Administration, *available at* https://www. ssa.gov/agency/commissioner.html. Accordingly, the Court substitutes Commissioner Saul as titular Defendant.

[2] Napier claims filing of (and frames his appeal as addressing only) a DIB application (under Title II). *See* DE 12 at 2. The Commissioner, by contrast, asserts that Napier applied also for (and was denied) SSI benefits (under Title XVI). DE 14 at 1. The record supports Defendant. *See, e.g.*, R. at 191–193. Regardless, the "standard of review for supplemental security income cases mirrors the standard applied in social security disability cases." *Bailey v. Sec'y of Health & Human Servs.*, 922 F.2d 841, No. 90-3265, 1991 WL 310, at *3 (6th Cir. Jan. 3, 1991) (table); *see also Roby v. Comm'r of Soc. Sec.*, No. 12-10615, 2013 WL 451329, at *3 (E.D. Mich. Jan. 14, 2013) ("The standard for disability under both the DIB and SSI programs is virtually identical."), *adopted in* 2013 WL 450934 (E.D. Mich. Feb. 6, 2013).

## I.      FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Napier is currently 49 years old. *See* R. at 191. He alleges disability beginning on May 31, 2015. *Id*. Napier applied for SSI & DIB benefits in February 2016. R. at 191, 193. The SSA denied his claims initially on March 25, 2016, R. at 76 (Title XVI), 84 (Title II), and upon reconsideration on July 19, 2016. R. at 96, 108. Following Napier's August 2016 request, R. at 134, ALJ Jonathan Stanley held a hearing on March 22, 2018. R. at 31–68. At the hearing, attorney Thomas Polites represented Napier. R. at 31, 33. Claimant and impartial vocational expert (VE) Robert Piper testified. R. at 34–67. ALJ Stanley subsequently denied Napier's claims on July 25, 2018. R. at 14–24. The Appeals Council denied review, and thus upheld the ALJ's decision, on February 22, 2019. R. at 1–3.

The ALJ made several particular findings in the required sequence.[3] He determined that Napier had not engaged in substantial gainful activity since his March 31, 2015, alleged onset date. R. at 16. The ALJ next determined that Napier had numerous severe impairments. R. at 16–18. However, ALJ Stanley then found that Napier did "not have an impairment or combination of impairments that [met] or medically equal[ed] the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1[.]" R. at 18–19. The ALJ further made a detailed residual functional capacity (RFC) finding. R. at 19–22. Although ALJ Stanley found that Napier was "unable to perform [his] past relevant work," the ALJ, with VE testimony in support, determined that, given Napier's particular characteristics and RFC, "there are jobs that exist in significant numbers in the

---

[3] The ALJ—as a preliminary predicate for a period of disability (per 42 U.S.C. § 416(i)(2)(C)) and disability benefits (per 42 U.S.C. § 423(a)(1)(A))—found that Napier satisfied the §§ 416(i)(3) & 423(c)(1) insured-status requirements through December 31, 2019. R. at 14, 16.

2

national economy that [Napier] can perform[.]" R. at 22–23. Based on these considerations, the ALJ ruled that Napier was not under a disability from March 31, 2015, through the date of decision. *See* R. at 15, 23. Dissatisfied with the result of the SSA's subsequent administrative process, which denied him relief, Napier turned to federal court for review.

## II.     ANALYSIS

### A.     Standard of Review

The Court has carefully considered the ALJ's decision, the transcript of the administrative hearing, and the pertinent administrative record. The Court has turned every apt[4] sheet, primarily focusing on the portions of the record to which the parties specifically cite. *See* DE 10 (General Order 13-7), at ¶ 3(c) ("The parties shall provide the Court with specific page citations to the administrative record to support their arguments. The Court will not undertake an open-ended review of the entirety of the administrative record to find support for the parties' arguments.").

Judicial review of an ALJ's decision to deny disability benefits is a limited and deferential inquiry into whether substantial evidence supports the denial's factual decisions and whether the ALJ properly applied relevant legal standards. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 422 (6th Cir. 2008); *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (citing *Richardson v. Perales*, 91 S. Ct. 1420, 1427 (1971)); *see also* 42 U.S.C. § 405(g) (providing and defining judicial review for Social

---

[4] That is, those records relevant to the particular issues Napier presents for review.

3

Security claims) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]").

Substantial evidence means "more than a scintilla of evidence, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994); *see also Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). The Court does not try the case *de novo*, resolve conflicts in the evidence, or revisit questions of credibility. *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). Similarly, the Court does not reverse findings of the Commissioner or the ALJ merely because the record contains evidence—even substantial evidence—to support a different conclusion. *Warner*, 375 F.3d at 390. Rather, the Court must affirm the agency decision if substantial evidence supports it, even if the Court might have decided the case differently if in the ALJ's shoes. *See Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389–90 (6th Cir. 1999).

The ALJ, when determining disability, conducts a five-step analysis. *See Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994); 20 C.F.R. § 404.1520(a)(4); *id.* at § 416.920(a)(4).[5] At Step 1, the ALJ considers whether the claimant is performing substantial gainful activity. *See Preslar*, 14 F.3d at 1110; 20 C.F.R. § 416.920(a)(4)(i). At Step 2, the ALJ determines whether one or more of the claimant's impairments are severe. *Preslar*, 14 F.3d at 1110; 20 C.F.R. § 416.920(a)(4)(ii). At Step 3, the ALJ analyzes whether the claimant's impairments, alone

---

[5] Again, "the same legal standards and sequential evaluation process is employed for making the disability determination regardless of whether an application is for DIB or SSI." *Elliott v. Astrue*, No. 6:09-CV-069-KKC, 2010 WL 456783, at *4 (E.D. Ky. Feb. 3, 2010).

4

or in combination, meet or equal an entry in the Listing of Impairments. *Preslar*, 14 F.3d at 1110; 20 C.F.R. § 416.920(a)(4)(iii). At Step 4, the ALJ defines RFC and considers whether the claimant can perform past relevant work. *Preslar*, 14 F.3d at 1110; 20 C.F.R. § 416.920(a)(4)(iv). The inquiry at this stage (if applicable) is whether the claimant can still perform that type of work, not necessarily the specific past job. *See Studaway v. Sec'y of Health & Human Servs.*, 815 F.2d 1074, 1076 (6th Cir. 1987). Finally, at Step 5, when the burden shifts to the Commissioner, if the claimant cannot perform past relevant work, the ALJ determines whether significant numbers of other jobs exist in the national economy that the claimant can perform, given the applicable RFC. *See Preslar*, 14 F.3d at 1110; 20 C.F.R. § 404.1520(a)(4); *id.* at § 416.920(a)(4)(iv). If the ALJ determines at any step that the claimant is not disabled, the analysis ends at that step. *Mowery v. Heckler*, 771 F.2d 966, 969 (6th Cir. 1985); 20 C.F.R. § 404.1520(a)(4); *id.* at § 416.920(a)(4).

When reviewing the ALJ's application of the legal standards, the Court gives deference to his interpretation of the law and reviews the decision for reasonableness and consistency with governing statutes. *Whiteside v. Sec'y of Health & Human Servs.*, 834 F.2d 1289, 1292 (6th Cir. 1987). In a Social Security benefits case, the agency's construction of the statute should be followed "unless there are compelling indications that it is wrong." *Merz v. Sec'y of Health & Human Servs.*, 969 F.2d 201, 203 (6th Cir. 1992) (quoting *Whiteside*, 834 F.2d at 1292).

B.      The ALJ did not reversibly err.

Napier makes three arguments: that ALJ Stanley erroneously assigned "little" weight to the RFC assessments of two alleged treating sources, DE 12 at 6–7, that VE

Piper's testimony established Plaintiff's disability,[6] *id.* at 7, and, essentially, that substantial evidence does not support Judge Stanley's reliance on "the opinion and testing of" state consultant opinions,[7] *id.* at 2, 7. The Court evaluates each in turn.

*Alleged Treating Sources*

In the three weeks preceding the March 22, 2018, administrative hearing, APRNs Debra Napier and Teresa Cole, completed assessment forms regarding Plaintiff's physical and mental functional capacity. *See* R. at 1805–09 (Napier), 1810–14 (Cole). Napier (and Cole) concluded that Plaintiff "is unable to do any kind of work." R. at 1805; *see* R. at 1810 (Cole opining that Plaintiff could work "0 hours per day"). ALJ Stanley, as the fact of this appeal makes clear, rejected Napier and Cole's conclusions and otherwise assigned their opinions "little weight[.]" R. at 22. Claimant contends that the APRNs, "[a]s the treating professionals, . . . have a better idea of the condition of Shannon Napier and the ALJ erred in not giving more weight to those treating sources." DE 12 at 6. [It is

---

[6] Plaintiff initially presented this second theory quite differently. Napier suggested that he would argue Judge Stanley failed to consider whether the effects of all Napier's impairments (though when considered individually, insufficiently debilitating) combined to render him disabled. *See id.* at 2. However, Claimant's ultimate argument abandons any step-3 theory. *See id.* at 7. In any event, the ALJ thoroughly considered Napier's impairments—deeming many severe—and, after extensive analysis, found that the combined effects were not categorically disabling (*i.e.*, of listing-level severity). *See* R. at 17–19. Plaintiff's bald suggestion of possible error, if not intentionally abandoned certainly undeveloped, warrants no relief.

[7] This is the Court's (permissive) reading of Napier's third theory. *See id.* at 7. Plaintiff's initial statement of the issues, *id.* at 3, informs the Court's interpretation. However, to the extent Napier meant to argue what he explicitly wrote—*i.e.*, that "justice" somehow demands that the Court ignore binding limitations on the scope of review and weigh the evidence anew, *see id.* at 7—the Supreme Court (and the statute) unequivocally refute the contention. "On judicial review, an ALJ's factual findings . . . 'shall be conclusive' if supported by 'substantial evidence.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019) (quoting 42 U.S.C. § 405(g)). Disregarding controlling law would hardly serve the interests of justice. The Court does its best to discern what Napier means by the "C.E." reference, unburdened by record citation.

unclear who, exactly, Plaintiff is claiming the APRNs' knowledge was superior to.] The Court finds that the APRN opinions were not entitled to "treating source" deference and that Judge Stanley gave defensible weight to the Napier and Cole assessments.

First, the standard. Plaintiff does not back his argument with citation to authority, but the substance indicates that Napier is asserting a violation of the so-called "treating-physician rule." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 544 (6th Cir. 2004). Under this rule, an ALJ generally must give "greater deference" to "the opinions of treating physicians than to those of non-treating physicians." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007). And, when "discounting treating physicians' opinions," ALJs must provide good reasons—"reasons that are 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Id.* at 242–43.

The assessing APRNs are, of course, not physicians. Plaintiff does not argue otherwise but characterizes Napier and Cole as "treating sources." DE 12 at 6.[8] It is true that the "treating physician" rule is really a generic descriptor for regulations regarding the SSA's evaluation of "treating source" opinions. *See* 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).[9] Nonetheless, for present purposes, the moniker is apt enough. Deference under the "treating source" rules is due only to "acceptable medical sources[.]" *id.*, which the applicable regs limit (with certain exceptions not relevant here) to "[l]icensed

---

[8] The ALJ did not express any view concerning whether Napier and Cole were "treating" sources. *See* R. at 22.

[9] Per the SSA, a treating source is an "acceptable medical source" that "has, or has had, an ongoing treatment relationship with [a claimant]." 20 C.F.R. § 404.1527(a)(2). In turn, an "ongoing treatment relationship" exists "when the medical evidence establishes that [the claimant sees], or ha[s] seen, the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for" the claimant's "medical condition(s)." *Id.*

physicians[.]" 20 C.F.R. § 404.1513(a) (eff. 9/3/13–3/26/17).[10] Thus, the ALJ had no obligation to deferentially review the opinions of APRNs Napier and Cole under 20 C.F.R. § 404.1527(c)(2). *See supra* notes 9 & 10; *cf. Monette v. Colvin*, 654 F. App'x 516, 518 (2d Cir. 2016) ("[A] nurse practitioner is not an 'acceptable medical source' whose opinion is eligible for 'controlling weight.'"); *Hartman v. Colvin*, 954 F. Supp. 2d 618, 643 (W.D. Ky. 2013) (same).

Alternatively, if Napier intended to more generally indict the ALJ's handling of the APRN assessments, the Court sees no error.[11] An ALJ must evaluate non-treating-source opinions. *See, e.g.*, 20 C.F.R. § 404.1527(c) ("Regardless of its source, we will evaluate every medical opinion we receive."). That happened. *See* R. at 22. Judge Stanley gave the Napier and Cole opinions "little weight[,]" but he certainly did not ignore them. Moreover, substantial evidence supports the minimal weight assignment.

---

[10] A revised version of § 404.1513 took effect on March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 FR 5844-01. The revision was implemented as part of a final rule that, among other changes, disposed of distinctions between evaluation of "acceptable" and other medical sources for claims filed on or **after** March 27, 2017. *See id.* The current framework—though retaining the preexisting evaluation principles for pre-March 2017 claims—omits any definition for "acceptable medical sources." *Compare* 20 C.F.R. § 404.1527, *with id.* at § 404.1513. However, the SSA accounted for this definitional deficit during the rulemaking process. For claims, like Napier's, filed on or before the final rule's effective date, the SSA "continue[s] to use" certain prior rules, including the rule that "APRNs are not [acceptable medical sources], as explained in [then] current" 20 C.F.R. §§ 404.1513 & 416.913. *See* Proposed Revisions to Rules Regarding the Evaluation of Medical Evidence, 81 FR 62560-01 (NPRM proposed implementation plan); Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 FR 5844-01 (stating that SSA "decided to implement these final rules consistent with [the] proposed implementation process"). Thus, the APRN assessments were not entitled to "treating source" deference under governing law.

[11] Indeed, in the Court's view, the ALJ's handling and the supportive record are sufficient to satisfy the more stringent, though inapplicable, treating source requirements. *See Biestek v. Comm'r of Soc. Sec.*, 880 F.3d 778, 785 (6th Cir. 2017) (conditioning deference to treating physician's opinion on the opinion being "supported by clinical and laboratory diagnostic evidence not inconsistent with other substantial evidence in the record"), *aff'd*, *Biestek v. Berryhill*, 139 S. Ct. 1148 (2019).

The ALJ identified three bases for discounting the Cole/Napier opinions. First, Judge Stanley found the APRNs' March 2018 conclusions—that Plaintiff's impairments totally foreclosed his ability to work—inconsistent with the "largely normal" results of a January 2018 physical examination at Glendale Medical Center. R. at 22 (citing Glendale treatment records, R. at 1792–1804). An opinion's consistency, or lack thereof, "with the record as a whole" is a recognized, valid factor in the weighing calculus. 20 C.F.R. § 404.1527(c)(4). The record fully supports the ALJ's inconsistency finding.[12] Judge Stanley also justifiably rejected "opinions on issues reserved for the Commissioner[,]" R. at 22, such as APRN Napier's conclusion that Plaintiff is "unable to work[.]" R. at 1805; *see* 20 C.F.R. § 404.1527(d)(1); *Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 652 (6th Cir. 2009); *Bass*, 499 F.3d at 511. Last, the ALJ accurately (and to put it mildly) noted that APRN Cole's report of Plaintiff's "Global Assessment of Functioning" score within the 71-80 range "is inconsistent with a finding of mostly poor/no abilities." R. at 22; R. at 1811 (GAF Score).[13]

---

[12] Claimant visited the Glendale Medical Center on December 13, 2017, January 3, 2018, and January 11, 2018 (records list APRN Cole as the provider for this final visit). R. at 1792–1803. The results of physical examinations on all three occasions reflect only one abnormality; right knee "tenderness and limited [range of movement.]" R. at 1794, 1799, 1803. The treatment records otherwise depict Napier as, *e.g.*, "ambulating normally[,]" exhibiting normal "breath sounds" with "good air movement" and "no wheezing"; demonstrating "normal" motor strength "and normal tone"; and presenting "normal gait and station[.]" *Id.* Further, as to difficulties with anxiety and depression, Plaintiff himself reported no resulting "interfere[nce] with [his] activities of daily living[.]" R. at 1794, 1802. The March reports? Starkly different.

[13] "GAF is a tool used by health-care professionals to assess a person's psychological, social, and occupational functioning on a hypothetical continuum of mental illness." *Mosley v. Comm'r of Soc. Sec.*, No. 3:14-CV-278, 2015 WL 6857852, at *4 n.4 (S.D. Ohio Sept. 14, 2015) (citing Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000) (DSM-IV). "A GAF score of 71 to 80 indicates 'no more than slight impairment in social, occupational, or school functioning (e.g., temporarily falling behind in schoolwork).'" *Id.* (quoting DSM-IV at 34).

The full record provides further support. [The Court may, of course, consider pieces of record evidence "even if the ALJ failed to cite" them. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).] For instance, Cole represents treating Plaintiff for only 5 months prior to completing the form. R. at 1810. Given the chronic nature of several conditions for which Cole claimed to be treating Plaintiff, *see id.* (listing, *e.g.*, COPD & Type II Diabetes), the absence of relative longitudinal treatment presents another fair discounting basis. *See, e.g.*, 20 C.F.R. § 404.1527(c)(2)(i) & (ii) (listing, as factors for opinion evaluation, "frequency of examination[,]" as well as the length, "[n]ature and extent of the treatment relationship").

Also, the APRN opinions, though given on the same day, are themselves partly inconsistent. *Compare* R. at 1805 ("capable of stooping[,]" "bending[,]" and able to walk continuously "for 10 minutes"), *and* R. at 1808 (finding Claimant's mental abilities and aptitude for unskilled work "unlimited or very good" in 10 categories), *with* R. at 1810 (no bending, stooping, and unable to walk), *and* R. at 1813 (ranking Plaintiff's abilities and aptitude as "fair[,] poor[,] or none" in every category); *see also* 20 C.F.R. § 404.1527 (Weight assignments may turn on an opinion's consistency with the full record.). Cole's opinion that Napier "cannot walk[,]" R. at 1810, is sharply contrary to Claimant's own hearing testimony. *See* R. at 55 (representing that he "**can walk**" and tries to "help [his] girlfriend with washing dishes and maybe vacuuming some" (emphasis added)).

Additionally, despite the RFC forms' clear instructions on the importance of relating "particular medical findings to any reduction in capacity[,]" the completed assessments feature, at best, minimal detail and no elaboration. Neither Napier nor Cole cross references the results of objective medical testing or examination to support the

stated views.[14] Napier argues the APRNs reviewed "objective diagnostic test[s], the positive findings from Dr. Yen, the surgery performed at the University of Kentucky[,] and the follow up treatment for the stroke and peripheral artery disease" before concluding that "Plaintiff was permanently and totally disabled." DE 12 at 6. Yet, Plaintiff cites no evidence substantiating this purported expansive historical review—and, as recounted, the RFC forms certainly do not, themselves, claim any extensive record appraisals. Failure to present "relevant evidence to support a medical opinion" may, of course, justify a reduced weight assignment. *See* 20 C.F.R. § 404.1527(c)(3).

In sum, figures seemingly plucked from mid-air on forms explicitly labeled RFC questionnaires are rightfully subject to ALJ scrutiny. "Any record opinion . . . may be rejected by the ALJ when the source's opinion is not well supported by medical diagnostics or if it is inconsistent with the record." *Norris v. Comm'r of Soc. Sec.*, 461 F. App'x 433, 439 (6th Cir. 2012). Claimant entirely fails to grapple with any of the specific discounting bases that ALJ Stanley (with substantial evidentiary support) relied on. *See* DE 12 at 6–7. The additional discussed inconsistencies and a lack of objective support further justify the ALJ's handling of the APRN opinions. At bottom, the ALJ rationally deemed the responses on the checkbox forms entitled to little weight. Plaintiff's first challenge is meritless.

*Alleged VE Testimony*

Napier alleges that VE Piper "opined that the Plaintiff would likely miss up to three or more days of work per month, that he would have difficulty with staying on task,

---

[14] The sole exception is Cole's identification of a GAF score, which, again, does not empirically square with the severity of the limits reported. *See supra* n. 13 and accompanying text.

and that he would require more breaks than a normal employee." DE 12 at 7. Given that this contention is factually inaccurate, it comes as no surprise that it is unaccompanied by a record citation. In reality, the VE addressed the availability of jobs for a "**hypothetical** individual" with the limitations that Napier describes. R. at 65–66 (emphasis added). As is typical in such administrative hearings, Judge Stanley, not the VE, broached the topic of such restrictions. *See id.* The VE merely offered his opinion regarding the lack of available work for a person with such theoretical limits. Claimant's second argument turns entirely on his baseless reading of Piper's testimony. Specifically, Napier claims that "the Plaintiff, according to the vocational expert, should be disabled based upon the amount of absences, the fact th[at] Plaintiff would not be able to perform a full work day, the fact that the Plaintiff would have to lay down with his legs at heart level twice throughout the course of everyday [sic], etc." DE 12 at 7. That lone sentence is the extent of Claimant's argumentation under the heading "Combined Effects[.]" *Id.* Because the contention hinges on a faulty premise (the mischaracterized VE testimony), Napier obviously is not entitled to relief on this theory.

*State Agency Consultants*

With a final, two-sentence volley, Napier challenges the ALJ's "acceptance of the opinion and testing of the C.E." DE 12 at 6. Seemingly, given that there was no C.E., Claimant is obliquely challenging Judge Stanley's assignment of "significant weight" to "the state agency consultants' assessments[.]" R. at 22. As support for the argument, Napier does no more than baldly assert that "the overwhelming weight of the evidence" impeaches those opinions. The Court rejects this generalized, conclusory argument, unburdened by citation to the record or supporting authority. ALJ Stanley affirmed that

he gave "careful consideration" to "all the evidence" and found the state consultants' opinions consistent "with the record as a whole." R. at 15, 22. Napier's nonspecific argument regarding unnamed and allegedly "overwhelming" contrary evidence plainly earns no remedy; the Court could not reverse the ALJ's decision based on alleged infirmities Napier himself declined to identify. Vague allusions, sans citation (or even method of intelligible identification), to purported error are patently deficient. "It is not enough for a party to mention a possible argument in the most skeletal way and leave the court to put flesh on its bones." *Brenay v. Schartow*, 709 F. App'x 331, 336 (6th Cir. 2017) (internal citations and quotation marks are omitted).

Addressing an unadorned allegation that an adverse disability decision was "not supported by substantial evidence in the administrative record," the Sixth Circuit reasoned:

> This challenge warrants little discussion, as [claimant] has made little effort to develop this argument in her brief on appeal, or to identify any specific aspects of the Commissioner's determination that lack support in the record. Under these circumstances, we decline to formulate arguments on [claimant's] behalf, or to undertake an open-ended review of the entirety of the administrative record to determine (i) whether it might contain evidence that arguably is inconsistent with the Commissioner's decision, and (ii) if so, whether the Commissioner sufficiently accounted for this evidence. Rather, we limit our consideration to the particular points that [claimant] appears to raise in her brief on appeal.

*Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 490–91 (6th Cir. 2006). So too here. The Court, consistent with *Hollon*, has evaluated the merits of "the particular points that [Napier] appears to raise in" his motion. Plaintiff's final argument, lacking a

particularized point of any kind, simply is not one of them.[15] Claimant earns little

discussion and no relief on this final thrust. *See, e.g.*, *United States v. Bradley*, 917 F.3d

493, 509 (6th Cir. 2019) ("[I]ssues adverted to in a perfunctory manner, unaccompanied

by some effort at developed argumentation, are deemed waived." (internal citations and

quotation marks omitted)); *Howard v. City of Girard*, 346 F. App'x 49, 52 (6th Cir. 2009)

(citing cases); *United States v. Reed*, 167 F.3d 984, 993 (6th Cir. 1999); *Buziashvili v.*

*Inman*, 106 F.3d 709, 719 (6th Cir. 1997); *McPherson v. Kelsey*, 125 F.3d 989, 995–96

(6th Cir. 1997).[16]

*The Walker*

One more point. Napier makes much of a "walker with [a] seat . . . prescribed

soon before the [h]earing[.]" *See, e.g.*, DE 12 at 6. Plaintiff contends he "would be

required to use" this assistive device on an ongoing basis. *Id.* The ALJ specifically

addressed the walker issue. Judge Stanley noted that in January 2018, Plaintiff was able

to ambulate freely, and that the "pre-ulcerative lesion and tinea pedis" (for which the

---

[15] Really, it is not even clear what "testing" or which opinion Napier contends is impeached by purportedly "overwhelming" (but unidentified) evidence. Claimant purports to attack the ALJ's reliance on a <u>single</u> "C.E." DE 12 at 7. Napier did not participate in a consultative examination. *See* R. at 71, 79, 91, 102 (concluding that no consultative examination was necessary). Thus, Judge Stanley did not rely on any "C.E." opinion. Rather, the ALJ gave significant weight to *two* state agency consultants (not one, as the argument suggests): Drs. Irlandez and Freudenberger. R. at 22, 97, 103, 108. This is generally permissible. *Gibbens v. Comm'r of Soc. Sec.*, 659 F. App'x 238, 247 (6th Cir. 2016) ("State agency medical consultants are highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Social Security Act[.]"). And Napier's generic opposition justifies no deeper inspection. The ALJ rested on proof he reasonably found more reliable.

[16] An additional fatal frailty in Napier's last claim is the failure to argue a lack of substantial evidence to support the ALJ's reliance on the state consultants' opinions. An argument that ignores the applicable standard earns no redress. *See Blakley*, 581 F.3d at 406 ("[I]f substantial evidence supports the ALJ's decision, this Court defers to that finding '**even if there is substantial evidence in the record that would have supported an opposite conclusion.**'") (emphasis added & citation omitted).

walker was prescribed) was expected to "heal shortly." R. at 19. Dr. Chih Yen, after prescribing the walker on February 12, 2018, directed Napier to "follow up again in 2 weeks[.]" R. at 1746. Napier scheduled another visit for February 23, 2018. *Id.* However, the record includes no documentation for any subsequent visit.[17] More importantly, nothing in the papers from the initial visit suggests that Dr. Yen believed, as the citation-free briefing suggests, that Plaintiff would require a walker once the pre-ulcerative lesion healed.

Moreover, Napier specifically faults the ALJ (on this topic) only for failing to "even ask[ ]" the VE about the walker. Yet, an ALJ's step-5 hypothetical questioning need only include the claimant's "credible functional limitations[.]" *Santiago v. Comm'r of Soc. Sec.*, No. 1:13-CV-01216, 2014 WL 903115, at *6 n.8 (N.D. Ohio Mar. 7, 2014); *see also Justice v. Comm'r Soc. Sec. Admin.*, 515 F. App'x 583, 588 (6th Cir. 2013). Because the ALJ's step 4 determination typically squares with the VE inquiries, to demonstrate error based on an omitted limitation at step 5, a claimant generally must establish the absence of substantial evidentiary support for the ALJ's step 4 RFC formulation. Here, it was Plaintiff's burden to establish that his RFC (and thus VE hypotheticals) should have included a walker-use limitation. *See Preslar*, 14 F.3d at 1110. He failed to carry it (and truly failed to even present the predicate step 4 argument).

Again, Napier identifies nothing that contradicts the ALJ's conclusion that his "walker use was" to be "for a short period." R. at 18. Claimant was ambulating normally, with normal gait and station, less than a month before he was prescribed the walker. R. at

---

[17] At the administrative hearing, Claimant indicated a follow-up with Dr. Yen scheduled for March 29, 2018. R. at 53. Napier did not address whether he attended (or any results of) the February 23, 2018, scheduled appointment.

1803 (January 11, 2018, records). Plaintiff offers, and the Court sees, no evidence to suggest that a "pre-ulcerative lesion" behind a single toe was likely to render Napier walker reliant for a period lengthy enough to be meaningful for purposes of the relevant analysis. R. at 1746; *see* 42 U.S.C. § 423(d)(1)(A) (A disabling impairment is one that "has lasted or can be expected to last for a continuous period of not less than 12 months[.]").[18] Indeed, the tone of the related medical records suggests the restriction was transitory. *See* R. at 1746 (setting two week follow-up, discussing need to "stay off his foot a little bit more" in the "meantime[,]" and recommending "passive range of motion exercises in foot").[19] Thus, the ALJ did not err in failing to include a walker-use restriction (or pose a hypothetical including same to the VE).

## III.   CONCLUSION

In sum, ALJ Stanley exhaustively examined the conditions noted in Napier's medical history. *See* R. at 17–22. The ALJ circumspectly surveyed the record for accompanying limitations and their substantiated severity. *See id.* The results of that analysis (which audited all records for, the progression and improvement in, and the prognoses for each identified impairment, all with a backdrop of conservative treatment and a typically non-compliant patient) led to a particular RFC which, in turn, formed the

---

[18] *See also* 20 C.F.R. § 416.945 ("Your residual functional capacity is the **most** you can still do despite your limitations." (emphasis added)); R. at 55 (Napier "can walk" and tries to "help [his] girlfriend with washing dishes and maybe vacuuming some[.]"); *Davison v. Berryhill*, No. 3:18-CV-00578-LLK, 2019 WL 1993549, at *1 (W.D. Ky. May 6, 2019) (finding no error in ALJ's rejection of leg-elevation restriction as a "permanent or semi-permanent job restriction" where, *inter alia*, the record offered "no indication that Dr. Nair intended this one-time advice as a work restriction satisfying the 12-month duration requirement").

[19] *Cf.* 20 C.F.R. § 404.1530(a) ("In order to get benefits, you must follow treatment prescribed by your medical source(s) if this treatment is expected to restore your ability to work.").

basis for hypothetical questioning of VE Piper. The VE testified that significant jobs were available to an individual with the limits Judge Stanley found objectively and medically corroborated. Claiming error in Judge Stanley's diligent review, Plaintiff offers little more than conclusory assertions.[20] Napier's single developed argument is, for the reasons discussed, fatally flawed. The balance of Claimant's motion fails to wrestle effectively with the ALJ's carefully described decisional calculus. It is not the Court's responsibility to mine the record for posable sources of error; that task was Plaintiff's. Ultimately, Napier's perfunctory contentions show no ALJ missteps and entail no remedy.

For all these reasons, the Court **GRANTS** DE 14 and **DENIES** DE 12. The Court will enter a separate Judgment.

This the 23rd day of April, 2020.

Signed By:

_Robert E. Wier_

**United States District Judge**

---

[20] Napier, as an introduction, did summarize certain portions of his medical history. DE 12 at 3–5. Yet, Plaintiff fails to explain how that recitation supports any of his arguments or shows error in the ALJ's review. *See id.* at 6–7. Claimant's argument includes two citations to the VE's hearing testimony and a reference to the APRN assessment exhibits; it lacks citations to any medical record or diagnostic result and fails to cite any specific portions of the ALJ's reasoning that Napier intended to dispute. *See id.* Ultimately, Plaintiff's brief—failing to concretely connect the factual portrayal to any alleged ground for relief—presents "argument" more in name than substance.

17